IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SUZANNE L. BRIHN,

                        Plaintiff,                    OPINION AND ORDER

        v.
                                                      08-C-246-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is an action for judicial review of an adverse decision of the commissioner of

Social Security brought under 42 U.S.C. § 405(g).  Plaintiff Suzanne L. Brihn  seeks reversal

of the commissioner's decision that she is not disabled and therefore ineligible for Disability

Insurance Benefits under Title II, codified at 42 U.S.C. §§ 416(i) and 423(d).  Plaintiff

contends that the decision of the administrative law judge who denied her claim is not

supported by substantial evidence because the administrative law judge incorrectly found

that she did not have a mental impairment, failed at step three to find that her fibromyalgia

met or equaled a listed impairment, improperly rejected the opinion of her treating physician

and made an improper credibility determination.  Plaintiff also alleges that she was denied

a full and fair hearing because the administrative law judge cited evidence not in the record

1

and prohibited plaintiff from introducing evidence that had been lost after her prior hearing. Finally, plaintiff asserts that she is entitled to benefits given the fact that respondent lost her prior record and delayed the resolution of her application unnecessarily.

I find that substantial evidence supports the administrative law judge's decisions that plaintiff did not have a severe mental impairment and that her fibromyalgia did not meet or equal a listed impairment. I find that the administrative law judge provided good reasons supported by the evidence for not giving controlling weight to the treating physician's opinion and for not finding plaintiff credible. Because any error that the administrative law judge may have committed in considering evidence that was not in the record was harmless, I do not find that plaintiff was denied a full and fair hearing. Finally, I am not persuaded by plaintiff's arguments that she was denied a fair hearing because the administrative law judge prohibited her from introducing lost evidence and that she is entitled to benefits because of undue delay caused by respondent. Accordingly, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A. <u>Background and Procedural History</u>

Plaintiff was born on October 21, 1954 and graduated from high school.  AR 25-26, 184.  She has relevant work experience as a cook and a home attendant.  AR 25.

Plaintiff first applied for Social Security Disability Benefits on March 29, 1996.  Her application was denied initially and on reconsideration.  Following a hearing, an administrative law judge affirmed these determinations in a decision dated September 12, 1997.  The Appeals Council denied plaintiff's request for review on April 30, 1999.  Because plaintiff did not seek judicial review of the Appeals Council decision, the commissioner's decision on her 1996 application became final on September 12, 1997.  AR 16.

On June 1, 2001, plaintiff filed a second application for Social Security Disability benefits, alleging disability as of November 25, 1996 because of fibromyalgia, migraines, memory problems and anxiety attacks.  AR 35.  After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on November 6, 2002 before Administrative Law Judge Roger W. Thomas in Eau Claire, Wisconsin.  At the hearing, plaintiff sought to reopen her previous application on the ground of new and material evidence.  On January 31, 2002, Judge Thomas issued a decision finding no basis on which to reopen the 1996 application and concluding that plaintiff was not disabled at any time through her last insured date of December 31, 1998.  AR 35-47.

3

Plaintiff requested a review of this decision.  On April 21, 2006, the Appeals Council remanded plaintiff's case for a new hearing and decision because the record on which the adjudicator had based his decision could not be located.  AR 16.

On September 13, 2007, a hearing was held before Administrative Law Judge Mary M. Kunz in Eau Claire, Wisconsin.  AR 177-218.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer, a neutral medical expert and a neutral vocational expert.  AR 183-217.  On November 30, 2007, the administrative law judge issued her decision, finding plaintiff not disabled from September 12, 1997 through her last insured date of December 31, 1998.  AR 16-27.  That decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on March 15, 2008.  AR 5-7.

## B.  Medical Evidence

On January 6, 1995, plaintiff saw Dr. David Olson for knee pain.  He referred her to a surgeon, Dr. Engelking.  AR 96.  On January 20, 1995, plaintiff had right knee surgery to repair her meniscus.  AR 93-94.  On May 19, 1995, plaintiff returned to Dr. Olson because she was having increasing pain just below her knees and in her shoulders, hands and neck. Dr. Olson noted that she had a number of trigger points.  He wrote that plaintiff's symptoms seemed consistent with fibromyalgia.  He prescribed amitriptyline, but plaintiff reported that

it did not help.  Plaintiff reported that Aleve and Ibuprofen gave her some relief.  On September 22, 1995, Dr. Olson referred plaintiff to Dr. Conrad Butwinick.  AR 95.

Dr. Butwinick evaluated plaintiff on October 9, 1995 and reported to Dr. Olson that plaintiff's physical examination was unremarkable except for tender-point areas of sensitivity in virtually all locations.  AR 106-07.  He concluded that the correct diagnosis was fibromyalgia with an element of degenerative arthritis in her knees.  He prescribed Oruvail, Nortriptyline and Ultram.  AR 107.  On May 31, 1996, plaintiff again saw Dr. Butwinick, who reviewed her fibromyalgia status and current medications.  He noted that plaintiff remained moderately symptomatic and had on-going headaches.  He added Prozac to her medications.  AR 105.

On October 24, 1996, plaintiff's lawyer, Jason Whitley, wrote Dr. Butwinick a letter, which states in pertinent part:

> Also, please note that I have enclosed a copy of Social Security Listing 1.00 Musculoskeletal System.  I would ask that while making your report, you refer to section 1.02, as highlighted.  If you feel that Suzanne Brihn meets this listing, please so state in your report.
>
> I am also sending along a physical capacities evaluation form and ask that you complete it.  Obviously, the more restrictions you place upon Mrs. Brihn because of her condition, the better her chance of obtaining social security disability will be.  If you feel that she has to lie down during the course of a day because of her condition, you should also write that into the physical capacities evaluation as that will be very helpful.

AR 89-90.  Whitley also stated that Dr. Butwinick would be paid for this information.  AR 90.  Dr. Butwinick responded in a letter dated December 4, 1996, after seeing plaintiff on November 25, 1996.  He provided the following information.  Plaintiff had variable amounts of pain and aching in the typical fibromyalgia locations, disrupted non-restorative sleep and fatigue during the day.  She took frequent naps.  She had some minor cognitive impairment and admitted to feeling depressed.  Plaintiff was taking up to 12 Ultram a day, and he advised her that she should take no more than six in a 24-hour period.  She had partial relief from her symptoms with Nortriptyline, Ultram and Oruvail.  Dr. Butwinick did not mention whether plaintiff met a listed impairment.  He found that plaintiff had been and continued to be disabled.  He explained that plaintiff's education, training and experience, together with her illness left her unsuited for any employment.  AR 101-02.

Dr. Butwinick also completed a residual functional capacity assessment form, finding that plaintiff could occasionally lift twenty pounds and frequently lift ten pounds and could sit four hours, stand two hours and walk three hours in an eight-hour work day with no constant use of her upper extremities.  He did not state that she would need to lie down during the course of an eight-hour work day.  AR 103-04.

After re-evaluating plaintiff on April 11, 2001, Dr. Butwinick provided the following information to plaintiff's lawyer in a letter dated April 18, 2001.  Dr. Butwinick reported having seen plaintiff for her underlying fibromyalgia and that his previous functional

6

capacity assessment was based on plaintiff's best days, which occurred only four days a month.   He wrote that her symptoms included disrupted sleep, daytime fatigability, substantial cognitive impairment and musculoskeletal pain.   He indicated that her limitations dated back to October 1995.  AR 97-98.  Dr. Butwinick also completed a residual functional capacity form, stating that plaintiff could sit for two hours and stand or walk one hour in an eight-hour work day.  He also noted that she could not use her hands repetitively. AR 99-100.

## C.  Hearing Testimony

At the beginning of the hearing, the administrative judge indicated that she was working with plaintiff to reconstruct the file.  The administrative law judge asked plaintiff whether she had a copy of her attorney's October 24, 1996 letter to Dr. Butwinick. Plaintiff's attorney said he would look for it.  AR 180.  The administrative law judge stated: "I'm just trying to make sure that we have as much as we can, because I know that I was still missing a few things."  AR 181.  The administrative law judge law judge clarified that the relevant time period she was going to consider was from September 13, 1997, the day after the prior administrative law judge's decision, through December 31, 1998, the date that plaintiff's insured status expired.  She stated that she would not be reopening the 1996

7

application or reconsidering the administrative law judge's September 12, 1997 decision. AR 181-83.

Plaintiff testified that she had worked as cook and a home health aid but stopped working in 1993. AR 184-89. She stated that in 1997 and 1998, she was living with her husband and her two young daughters, who were approximately four and five years old at that time. She explained that at some point between 1996 and 1998, her husband had triple bypass surgery and was off work. She stated that her older son moved in for about five months while her husband was recuperating. Plaintiff testified that during the period of September 13, 1997 through December 31, 1998, she could not stand, walk or sit for an extended period of time because of pain and fatigue. She stated that she saw chiropractors during this time period and was taking Ultram, a pain medication, that helped her symptoms for a while. AR 190-93.

Plaintiff testified that in 1997 and 1998, she made breakfast for her children and helped her husband get the girls off to school on the bus. She also helped her husband and children do the laundry and some light cleaning. She stated that she usually cooked the supper meal. Plaintiff testified that although she went to the grocery store, she could not carry the groceries from her car to the house. AR 193-97, 202.

Plaintiff testified that she rested for 20 minutes to one hour in the late morning and again in the late afternoon because she was in pain and tired from not sleeping. She

8

described her pain as not being able to have anyone touch her.  Plaintiff explained that her muscles, joints and skin hurt and that she had a dull headache all of the time.  She stated that if she tried to do anything, her arms would lock up.  Plaintiff testified that her symptoms had gotten worse since 1998.  AR 198-200.

The administrative law judge called Dr. Andrew Steiner to testify as a neutral medical expert.  AR 205.  In reviewing the evidence of record, Dr. Steiner noted that plaintiff had been diagnosed with fibromyalgia.  He also noted that there were reports of minor cognitive impairments and depression but that there were no actual cognitive studies or a record of treatment for depression.  AR 207.  Dr. Steiner testified that plaintiff did not have an impairment or combination of impairments that would meet a listed impairment.  He concluded that plaintiff could perform light work with no "continuous upper and lower extremities activities."  AR 208-09.  Dr. Steiner explained that the Ultram that plaintiff was taking was a fairly strong pain medication.  AR 210.

Next, the administrative law judge called Paul Malucci to testify as a neutral vocational expert.  AR 211.  He asked Malucci whether an individual of plaintiff's age would be able to perform plaintiff's past work if that person had plaintiff's educational background, work experience and the residual function capacity to perform unskilled light work limited to lifting up to twenty pounds occasionally and ten pounds frequently, walking or standing six hours and sitting two hours in an eight-hour work day with frequent rather than constant

repetitive activities of the feet, legs, hands and arms.  Malucci responded that such an individual would not be able to perform plaintiff's past work, but he testified that the individual would be able to perform jobs in a clean environment as an office helper (4,400 jobs in Wisconsin) and factory laborer (15,000 jobs in Wisconsin).  AR 213-14.

In the second hypothetical question, the administrative law judge asked Malucci whether an individual who needed to lie down during the work day for a minimum of 20 minutes and a maximum of an hour twice a day could perform the jobs that he had listed. Malucci responded that the individual could not perform the jobs.  The administrative law judge then asked whether the individual could perform competitive work if she missed up to four days of work a month.  Malucci said that the individual could not perform competitive work.  AR 214.  The administrative law judge asked Malucci whether his testimony was consistent with the Dictionary of Occupational Titles and he responded yes. AR 215.

After the hearing, on October 15, 2007, Carol Haffner, plaintiff's friend, submitted a written statement.  She wrote that plaintiff had to quit gardening because of her pain, which was getting worse every day.  AR 88.

10

## D.  The Administrative Law Judge's Decision

In reaching her conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one, she found that plaintiff had not engaged in substantial gainful activity from September 13, 1997 through her last insured date of December 31, 1998.  At step two, the administrative law judge found that plaintiff had severe impairments of a history of right knee arthroscopy and fibromyalgia.  AR 19.  However, after analyzing the record pursuant to the special technique set forth for mental impairments in 20 C.F.R. § 1520a, she did not find that plaintiff had a medically determinable mental impairment of depression or cognitive disorder.  In support, she stated:

> The claimant reports some speech and motor movement problems, confusion and difficulty focusing.  However, there are no actual cognitive studies or psychiatric determination to support a diagnosis of either depression or cognitive impairment.   There is no evidence of any mental health treatment in the record, and Dr. Butwinick did not refer the claimant to a psychiatrist, psychologist or other mental health professional for evaluation, which suggests that he did not feel the severity of the claimant's cognitive impairment and depression warranted any further treatment.

AR 20.  The administrative law judge noted that in Dr. Butwinick wrote in December 1996 that plaintiff had reported feeling depressed during her office visit the month before.  However, she discounted this report because Dr. Butwinick did not explain the impairment

11

or say whether he observed her mental status or whether he examined her. He also failed to refer plaintiff to a mental health professional for treatment. AR 19.

The administrative law judge also noted that in his January 2003 decision, Administrative Law Judge Roger Thomas referred to the opinions of state agency psychologists, who stated that plaintiff did not have a mental impairment between September 1997 and December 31, 1998. The administrative law judge gave great weight to these opinions. (The consulting opinions are not part of the record because they were lost. However, the January 2003 decision is part of the record.) AR 20.

Relying on the testimony of Dr. Steiner, the administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Dr. Steiner had cited the absence of a medical record and objective medical changes necessary to establish the listing criteria. AR 20.

At step four, the administrative law judge determined that plaintiff retained the residual functional capacity to perform unskilled, light work that required lifting twenty pounds occasionally and ten pounds frequently, standing or walking six hours and sitting two hours in an eight-hour work day and no continuous repetitive activities of the feet, legs, hands and arms. AR 21. In making this finding, the administrative law judge gave great weight to the testimony of Dr. Steiner, who she stated was familiar with the disability

12

program requirements and had the opportunity to review the medical evidence of record and hear plaintiff's testimony.  She found that the opinions of the state agency physicians that plaintiff could perform light work were consistent with her residual functional capacity assessment.  Although those opinions were not part of the record, Judge Thomas referred to them in his January 2003 decision.  The administrative law judge stated that she accounted for plaintiff's subjective allegations of fatigue and pain by limiting her to unskilled work.  AR 23.

The administrative law judge gave only partial weight to Dr. Butwinick's 1996 opinion and physical residual functional capacity assessment.  Specifically, the administrative law judge adopted Dr. Butwinick's opinion that plaintiff was limited to lifting a maximum of twenty pounds from the floor and no repetitive use of the lower or upper extremities because it was consistent with the overall evidence of record.  She also noted that he made these findings upon his October 1995 examination of plaintiff, which was the examination closest to the relevant period of 1997 to 1998.  AR 23.

The administrative law judge gave little weight to Dr. Butwinick's opinion that plaintiff could stand no more than two hours and walk no more than three hours in an eight-hour work day and was disabled from any type of gainful employment.  The administrative law judge also discounted Dr. Butwinick's April 18, 2001 functional capacity report in which he found that plaintiff experienced non-restorative sleep, daytime fatigue and

musculoskeletal pain and could only sit two hours, stand one hour and walk one hour in an eight-hour work day. The administrative law judge found that these limitations were not supported by the medical evidence or Dr. Butwinick's own treatment notes. She pointed out that Dr. Butwinick had acknowledged in his reports that apart from tender points, plaintiff's 1995 physical examination and 1996 laboratory studies were unremarkable.

The administrative law judge noted that Dr. Butwinick's 1996 limitations for plaintiff appeared to be based on plaintiff's subjective complaints of pain rather than any objective findings made on physical examination. She pointed out that plaintiff's November 1996 visit was not so much an attempt to seek treatment as a response to the October 1996 letter from her attorney, who seemed to encourage Dr. Butwinick to find restrictions and paid him for his report. She found plaintiff's course of treatment inconsistent with her alleged level of disability, noting that she had seen Dr. Butwinick only four times between October 9, 1995 and April 11, 2001. Further, Dr. Butwinick did not treat plaintiff during the relevant period of September 13, 2007 to December 31, 1998. AR 23.

In determining plaintiff's residual functional capacity, the administrative law judge found that plaintiff's statements regarding the intensity, duration and limiting effect of her symptoms were not entirely credible:

> In reaching this conclusion as to the claimant's residual functional capacity, the undersigned finds the claimant credible that she has been subject to a degree of pain and functional

14

> limitation during the pertinent period in this case and the residual functional capacity was, accordingly, reduced to accommodate these limitations. However, the undersigned cannot conclude that the claimant is incapable of all work activity at any exertional level because of significant inconsistencies in the record as a whole.

AR 23. In assessing plaintiff's credibility, the administrative law judge considered plaintiff's overall medical treatment and found that the "record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms, with no evidence of any actual physical examination conducted during the period of time under adjudication." AR 24.

In addition to the medical evidence, the administrative law judge considered other relevant factors. She reviewed plaintiff's medication use and found that plaintiff had been taking up to 12 Ultram a day for pain with no significant side effects. With respect to daily activities, the administrative law judge noted that plaintiff had testified that in 1997 and 1998, she got her children ready for school, made breakfast for her family, picked up around the house, did laundry, washed dishes, prepared supper and went shopping. She found these activities inconsistent with plaintiff's complaints of disabling symptoms and limitations. The administrative law judge also found that although plaintiff had a stable work history during many of the years prior to 1994, she had minimal earnings from 1983 to 1985. Moreover, she found that plaintiff had not sought any vocational rehabilitation services to assist her in finding employment. AR 25.

15

Based on the testimony of the vocational expert, the administrative law judge found that plaintiff could not perform her past work.  However, she found that plaintiff was not disabled because there were jobs existing in Wisconsin that plaintiff could perform, namely office worker and production worker.  The administrative law judge found that the vocational expert's testimony was consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.  AR 26.

OPINION

A.   <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  <u>Clifford v. Apfel</u>, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on

the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).


B.  Analysis

Plaintiff argues that she did not receive a full and fair hearing because the administrative law judge discredited all of the evidence except for the opinion of the medical expert, Dr. Steiner.  Specifically, she asserts that the administrative law judge erred in determining that she did not suffer from a severe mental impairment and that her fibromyalgia does not meet or equal a listed impairment, made an improper credibility determination and made a flawed residual functional capacity assessment.  She also claims that she was denied a full and fair hearing because the administrative law judge cited evidence not in the record and prohibited plaintiff from introducing evidence that had been lost after her prior hearing.  Finally, plaintiff asserts that she is entitled to benefits given the

17

fact that respondent lost her prior record and delayed the resolution of her application unnecessarily.  I will address each concern separately.

1.  Mental impairment

An administrative law judge must use the special technique set forth in 20 C.F.R. § 404.1520a(b)(1) to analyze whether the claimant has a medically determinable mental impairment.  Craft v. Astrue, 539 F.3d 668, 674 (7th Cir. 2008).  Specifically, the adjudicator must evaluate pertinent symptoms, signs and laboratory findings.  20 C.F.R. § 404.1520a(b)(1).  In the instant case, the administrative law judge noted that Dr. Steiner found some references to depression and minor cognitive impairments in the record, including some speech and motor movement problems, confusion and difficulty focusing. However, she found no actual cognitive studies or psychiatric determination to support a diagnosis of either depression or cognitive impairment.  This finding is well-founded.

As the administrative law judge pointed out, there is no evidence of any mental health treatment in the record.  Although Dr. Butwinick wrote in December 1996 that plaintiff had reported in November 1996 that she felt depressed, the administrative law judge discounted this report because Dr. Butwinick did not explain the impairment or say whether he observed her mental status or whether he examined her.  Because Dr. Butwinick did not refer the claimant to a psychiatrist, psychologist or other mental health professional for evaluation,

18

the administrative law judge reasonably could conclude Butwinick did not believe that plaintiff's symptoms were severe or warranted treatment.

Contrary to plaintiff's contention, the administrative law judge did not rely solely on Dr. Steiner's testimony to determine the lack of a medically determinable mental impairment.  There simply was not enough evidence to support plaintiff's claim.

Plaintiff argues that if the administrative law judge found the evidence of a mental impairment lacking, she should have ordered a consultative examination and not "played doctor."  However, when a plaintiff is represented by an attorney, the administrative law judge is entitled to assume that the attorney will make a request for a consultative expert if he or she deems it important.  Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987) (administrative law judge can assume that applicant represented by counsel is "making his strongest case for benefits").  Further, an administrative law judge must consult a medical expert only if she concludes that the evidence before her is insufficient to make a determination.  20 C.F.R. § 416.927(f)(2)(iii) (administrative law judge may ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment).  As previously discussed, I am satisfied that there was sufficient evidence in the record for the administrative law judge to determine that plaintiff had no mental impairment during the relevant period.  In addition, a consultative examination almost nine years after plaintiff's last insured date would not have been helpful

19

in evaluating plaintiff's mental functioning at the time she was insured.  Accordingly, I find that the administrative law judge did not err in failing to order a consultative examination.

Finally, plaintiff faults the administrative law judge for citing evidence that was part of the lost record.  The administrative law judge stated that she gave great weight to the opinions of state agency psychologists that plaintiff did not have a mental impairment between September 1997 and December 31, 1998.  She noted that although the actual opinions had been lost, Administrative Law Judge Roger Thomas referred to them in his January 2003 decision.  Plaintiff argues that the administrative law judge abused her discretion by relying on a decision vacated by the Appeals Council.  I agree with plaintiff's concerns.  However, any error that Administrative Law Judge Kunz may have committed is harmless.  Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003) (harmless error doctrine applies to administrative decisions).  As previously discussed, even without the consulting physician opinions, the administrative law judge reasonably could find that there was insufficient evidence to establish that plaintiff had a medically determinable mental impairment.  Therefore, the outcome would not change on remand.

2. Listed impairment of fibromyalgia

Although the administrative law judge found that plaintiff was severely impaired by fibromyalgia, she relied on Dr. Steiner's testimony to find that it failed to meet or equal a

20

listed impairment.  Dr. Steiner testified that the medical evidence of plaintiff's fibromyalgia was sparse.  He found no documented, objective medical changes with regard to muscle or joint activities that are necessary to meet or equal the listing for fibromyalgia.  Plaintiff argues generally that she has a diagnosis of fibromyalgia.  That is true.  The administrative law judge found that plaintiff was severely impaired by the condition.  However, when plaintiff's lawyer asked Dr. Butwinick to address whether plaintiff's fibromyalgia met a listed impairment, Dr. Butwinick failed to do so.  Plaintiff did not present any evidence at the hearing and has not pointed to any evidence in the record showing that her fibromyalgia meets or equals a certain listing.  Because the administrative law judge did not reject any evidence that plaintiff met or equaled a listed impairment, she did not commit error in making her step three finding.  Scheck v. Barnhart, 357 F.3d 697, 700-01 (7th Cir. 2004).


3.  Credibility

    Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if

21

such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck, 357 F.3d at 702. When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence. Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible. Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions. SSR 96-7p; 20 C.F.R. § 404.1529(c). See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility. Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000). In general, an administrative law judge's credibility determination will be upheld unless it is "patently

22

wrong." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result. Shramek, 226 F.3d at 811. The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record. Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Contrary to plaintiff's assertion, the administrative law judge did not rely solely on Dr. Steiner's testimony about the medical evidence in finding her not credible. She considered all of the evidence of record, applied the factors listed in the regulation and provided well-founded reasons for her decision. The administrative law judge noted that she accounted for some of plaintiff's allegations of pain and functional limitation in her residual functional capacity assessment. However, she found that plaintiff's statement that she was incapable of performing work at any exertional level was not credible because of significant inconsistencies in the record as a whole. In support, the administrative law judge considered plaintiff's course of medical treatment. She noted that plaintiff infrequently saw a doctor for her allegedly disabling symptoms and that no actual physical examination was conducted during the relevant time period of September 12, 1997 through December 31, 1998.

23

In addition to the medical evidence, the administrative law judge considered the other relevant factors listed in the regulation.  She reviewed plaintiff's medication use and found that she did not have any significant side effects.  The administrative law judge considered plaintiff's work history, noting that although she had a stable work history prior to 1994, she had minimal earnings from 1983 to 1985 and had not sought any vocational rehabilitation services to assist her in finding alternative employment.

With respect to daily activities, the administrative law judge noted that plaintiff had testified that in 1997 and 1998, she got her children ready for school, made breakfast for her family, picked up around the house, did laundry, washed dishes, prepared supper and went shopping.  She found these activities inconsistent with plaintiff's complaints of disabling symptoms and limitations.  Plaintiff argues that her daily activities were minimal and that her husband and children helped her.  See Zurawski, 245 F.3d at 887 (ability to perform a daily routine and sporadic diversions does not refute a claim of disability); Clifford, 227 F.3d at 872 (same).  However, plaintiff had testified that she was in so much pain that she could not take anyone touching her and was unable to stand, walk or sit for an extended period of time.  She also explained that her muscles, joints and skin hurt and had a dull headache all the time.  The administrative law judge reasonably could conclude that the severity of pain alleged by plaintiff was inconsistent with the household chores that she was able to perform.  Even Dr. Butwinick's limitations for plaintiff were not as severe as one might

24

expect given plaintiff's subjective complaints.  Dr. Butwinick found that she could occasionally lift twenty pounds and frequently lift ten pounds and could sit four hours, stand two hours and walk three hours in an eight-hour work day.  Even though plaintiff's attorney suggested that plaintiff had to lie down during the workday, Dr. Butwinick did not assess such a restriction in the residual functional capacity form that he completed for plaintiff.

In addition, during the relevant time period, plaintiff's husband was recovering from a triple bypass surgery and her children were no more than five years old.  It is unlikely that plaintiff would have been able to limit her activities as much as she claimed, even if her older son helped out.  In any event, plaintiff's daily activities are just one of several factors that the administrative law judge considered.  Given all the evidence of record, I cannot find that the administrative law judge's credibility determination was patently wrong.

In sum, the administrative law judge built an accurate and logical bridge between the evidence and result and gave good reasons for her determination that are supported by the record.  Therefore, plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.

4.  Treating physician opinion

Plaintiff argues that in making her step four finding, the administrative law judge erroneously rejected the opinion of her treating physician, Dr. Butwinick, in favor of the

opinion of Dr. Steiner.  Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. § 404.1527(d)(2).  When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.  20 C.F.R. § 404.1527(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

Plaintiff correctly asserts that a contradictory opinion of a non-examining physician is not, by itself, sufficient to provide the evidence necessary to reject a treating physician's opinion.  Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).  By rejecting a treating

physician's opinion only on the basis of a non-examining physician, the administrative law judge is effectively substituting his judgment for that of the treating physician, something he cannot do.  However, the administrative law judge considered Dr. Butwinick's opinion and adopted portions of it that were consistent with the overall evidence of record. Specifically, she included in her residual functional capacity assessment the limitations that plaintiff could lift a maximum of twenty pounds from the floor, could sit for four hours and was precluded from repetitive use of the upper and lower extremities.

The administrative law judge provided good reasons for not giving controlling weight to the remainder of Dr. Butwinick's opinion.  She found that the severity of the limitations that he assessed for plaintiff were not supported by his treatment notes or his infrequent treatment of her.  The administrative law judge noted that Dr. Butwinick saw plaintiff only four times, on October 9, 1995, May 31, 1996, November 25, 1996 and April 11, 2001, and did not examine her during the relevant time period of September 12, 1997 through December 31, 1998.  She pointed out that Dr. Butwinick's own treatment notes stated that plaintiff had fibromyalgia and that she remained moderately symptomatic.  Apart from tender points, plaintiff's 1995 physical examination and 1996 laboratory studies were unremarkable.

The administrative law judge found that Dr. Butwinick's December 1996 opinion was based on plaintiff's subjective complaints of pain in November 1996, rather than any

objective findings made on physical examination. It is well-settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because it "was based largely upon the claimant's self-reported symptoms" and was not supported by the objective medical evidence); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted). Because the administrative law judge properly discounted plaintiff's subjective statements as not credible, it follows that he could reject any opinions that were based on those statements.

The administrative law judge noted that plaintiff's November 1996 visit was not so much an attempt to seek treatment as a response to the October 1996 letter from her attorney. She took issue with the fact that plaintiff's counsel encouraged Dr. Butwinick to assess as many restrictions as he could and paid him for his opinion. Even though plaintiff's

28

counsel asked Dr. Butwinick to state whether plaintiff's impairment met a listed impairment or whether she would be restricted to lying down during the workday, Dr. Butwinick did not address these issues.

The findings of the administrative law judge are well founded and supported by substantial evidence in the record. Hofslien v. Barnhart, 439 F. 3d 375, 377 (7th Cir. 2006) (administrative law judge determines how much weight to give various medical opinions and court will uphold that decision as long as it is supported by substantial evidence). Accordingly, I do not find that the administrative law judge erred in rejecting portions of Dr. Butwinick's opinion.

5. Other arguments

Plaintiff makes three other arguments that she was denied a full and fair hearing. First, plaintiff contends that in making her residual functional capacity assessment, the administrative law judge erroneously referred to the opinions of the state consulting physicians that plaintiff was capable of light work. These opinions were part of the lost record and the administrative law judge should not have relied on them. However, as with plaintiff's mental impairment, that error was harmless because substantial evidence supports the administrative law judge's residual functional capacity assessment. As explained in the discussions of the credibility determination and the rejection of Dr. Butwinick's opinion, the

29

administrative law judge properly relied on the opinion of Dr. Steiner and other evidence of record in making her assessment.

Second, plaintiff contends that the administrative law judge prohibited plaintiff from introducing evidence that had been lost after her prior hearing.   However, as the commissioner points out, the record does not support this contention.  Plaintiff was free to submit evidence even though the administrative law judge restricted the relevant time period from September 13, 1997 to December 31, 1998.  The administrative law judge acted within her discretion when she refused to reopen plaintiff's initial application and that decision is not reviewable by this court.  Bolden ex. Rel Bolden v. Bowen, 868 F.2d 916, 918 (7th Cir. 1989)(providing that decision to reopen is not judicially reviewable).

Finally, plaintiff argues that she should be awarded benefits because of the seven-year delay on the part of the commissioner in resolving her case.  Although a district court can award social security benefits in lieu of remanding the case, I have not found that plaintiff is entitled to relief.   Wilder v. Apfel, 153 F.3d 799, 801 (7th Cir. 1998); Worzalla v. Barnhart, 311 F. Supp. 2d. 782, 800 (E.D. Wis. 2004).  To the extent that plaintiff may be arguing that she is entitled to an award of benefits solely on the ground of undue delay, I am denying that claim as well.

The United States Supreme Court has held that because Congress has consistently refused to impose deadlines on the adjudication of disability claims to avoid a potentially

adverse affect on the quality of disability adjudications, federal courts do not have the power to impose such deadlines on the disability adjudication process.  Heckler v. Day, 467 U.S. 104, 119 (1984).  In that case, the Court noted that two million disability claims were filed in 1983 and over 320,000 of these claims must be heard by 800 administrative law judges each year.  Id. at 106.  The Court of Appeals for the Seventh Circuit also has noted that Congress did not give federal courts a vigorous role in correcting administrative delay. Maxon Marine, Inc. v. Director, OWCP, 39 F.3d 144, 147 (7th Cir. 1994) ("The tools available to courts for remedying administrative delay are limited and weak.  There is no Speedy Administrative Proceeding Act.").

Although I do not condone the delay that occurred in this case as a result of the lost record, it does not appear to be abnormal for administrative proceedings in disability adjudications.  Given the enormous amount of disability cases waiting to be adjudicated, I do not find the delay inexcusable or egregious.  Plaintiff has not shown that the loss of her record was deliberate.  Although I sympathize with plaintiff and can understand her frustration at having to wait for a decision as long as she did, I cannot find that the delay in this case constituted a serious error or omission on the part of the respondent.  Accordingly, I cannot find that the delay by itself entitles plaintiff to an award of benefits.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Suzanne L. Brihn's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 22nd day of October, 2008.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge